UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CORDELL SHIVERS #531565      CIVIL ACTION NO. 20-cv-1334

VERSUS      JUDGE S. MAURICE HICKS, JR.

DARREL VANNOY      MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Cordell Shivers ("Petitioner") was convicted of second-degree murder and attempted second-degree murder after a bench trial in Caddo Parish before Judge Ramona Emanuel. The court imposed a mandatory life sentence without benefit of parole for the murder conviction and 41 years without benefit of parole for the attempted murder conviction, to run concurrently. The convictions and sentences were affirmed on direct appeal. State v. Shivers, 998 So.2d 877 (La. App. 2d 2008), writ denied, 21 So.3d 274 (La. 2009).

Petitioner filed a post-conviction application in state court. The trial court conducted an evidentiary hearing on some of the claims, then denied all claims on the merits (other than a claim for resentencing with respect to parole eligibility). The state appellate court summarily denied a writ application. The Supreme Court of Louisiana denied a writ application on the grounds that the post-conviction application was not timely filed in the district court within the two-year limitations period. Tr. Vol. XI, pp. 2664-65; State v. Shivers, 302 So.3d 516 (La. 2020).

Petitioner then filed this federal habeas corpus petition and raised essentially the same claims presented in his post-conviction application. The State has challenged the federal petition as untimely and argues that the claims are barred for failure to exhaust state court remedies, are subject to a procedural bar, were not adequately briefed, and lack merit. For the reasons that follow, it is recommended that the petition be denied as untimely. In the alternative, the claims are procedurally barred and lack merit.

**Background Facts**

The charges stem from a drive-by shooting that happened in Shreveport on the evening of January 27, 2006. Glen Eagan, Terrance Nash, and two other men were outside Eagan's home on Harris Street when a Lincoln Town Car with three men inside drove by. The two passengers opened fire. Eagan was killed, and Nash was severely wounded.

Sherrod Whittie testified that he was driving the Town Car, Petitioner was in the backseat behind him, and Jaravion Johnson was in the front passenger seat. Whittie said that he heard Petitioner say something like, "There they go," and shooting commenced from the area where Petitioner was seated. There was testimony that Petitioner was angry with one of the men in the group on the street because Petitioner suspected the man of burglarizing his mother's home. That man was not harmed in the shooting.

Eleven shell casings were found in the street. Two were 9 mm casings found on the side nearest the front seat passenger, and the other nine were 7.62x39 mm rifle casings that were found mostly on the side of the street where Petitioner was seated. A search of Petitioner's home discovered a 9 mm pistol that a firearms expert linked to shell casings found at the scene. The search also found 7.62x39, 9 mm, and other calibers of

ammunition.  The rifle used in the shooting was never found, but the Russian brand of 7.62x39 ammunition found in Petitioner's home was the same brand as the casings found at the scene.  The 9 mm cartridges found in his home were also the same brand as the two 9 mm casings found at the scene.  Petitioner's fingerprint was found on an auto parts receipt, issued the day of the shooting, inside the Town Car.

The jury also heard Petitioner's incriminating telephone conversations that were recorded while he was in jail.  Petitioner asked Johnson if Johnson shot the "nine," and Johnson said he shot it three times.  Petitioner said that he hoped they did not find the "club," which a police officer surmised was the rifle used to fire the 7.62x39 rounds. Petitioner also asked Johnson to "take the charge" for him because Johnson was a juvenile and would receive lighter punishment.  Petitioner was 17 at the time of the crimes and was charged as an adult.

**Timeliness**

### A.  If the Post-Conviction Application was Properly Filed

A one-year period of limitations applies to petitions for habeas corpus.  In an ordinary case, such as this one, the limitation period runs from the date on which the state court judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The first task, then, is to determine the date on which Petitioner's conviction became final after direct review.

Petitioner challenged his conviction on direct appeal to the intermediate appellate court and then filed an application for a discretionary writ to the Supreme Court of Louisiana, which denied the application on October 30, 2009. Tr. Vol. VIII, p. 1495. Petitioner did not file a petition for certiorari to the Supreme Court. In these circumstances, Petitioner's conviction is deemed final and commences the running of the federal limitations period when the 90-day period for filing a petition for certiorari to the Supreme Court expires. Matthis v. Cain, 627 F.3d 1001, 1003 (5th Cir. 2010), citing Jimenez v. Quarterman, 129 S.Ct. 681, 685 (2009). Thus, Petitioner's conviction became final for federal habeas purposes 90 days after the Supreme Court of Louisiana denied writs on October 30, 2009. That date is January 28, 2010.

The federal limitations clock began to run after January 28, 2010, and it ran until Petitioner either (1) filed a federal habeas petition or (2) tolled the limitations period by properly filing in state court an application for post-conviction relief. 28 U.S.C. § 2244(d)(2). The tolling statute provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." For reasons explained below, Petitioner's post-conviction application was not "properly filed," so it did not toll the limitations period. The court will nonetheless, for the benefit of alternative considerations, discuss timeliness as if the application were considered properly filed.

Petitioner's next step was to file a state post-conviction application. A Louisiana prisoner's pro se post-conviction application is deemed filed when he delivers it to prison authorities for forwarding to the court. LeBeuf v. Cooper, 2007 WL 1010296 (5th Cir. 2007); citing Causey v. Cain, 450 F.3d 601, 605-06 (5th Cir. 2006). Petitioner's post-conviction application was stamped filed by the clerk of court on January 28, 2011. Tr. Vol. VIII, p. 1496. Petitioner did not date his certificate of service. Tr. 1523. He did attach an affidavit that was notarized on January 27, 2011. Tr. 1524. The State argues that it is unlikely Petitioner would have tendered his petition for mailing before the affidavit was notarized. That is logical, but it may be that notarization was part of the post-tender process. It is impossible to tell from the record. It is also unusual for mail from the Louisiana State Penitentiary to reach Shreveport the next day.

Also relevant to the issue is Petitioner's evidence that he filed an Offender Funds Withdrawal Request dated January 24, 2011 for postage to mail the post-conviction application. Doc. 6-1, p. 2. There is no evidence of the date Petitioner actually tendered the application to prison officials for mailing, but under these particular circumstances the court will grant Petitioner the benefit of any doubt and consider the application filed on the same day the postage funds were requested, January 24, 2011. That filing tolled the federal clock after 360 un-tolled days had passed.

The filing of the post-conviction application did not restart the one-year period. All time that passed between finality of the conviction and the filing of the post-conviction application counts against the one-year period. Lawrence v. Florida, 127 S.Ct. 1079, 1081-

82 (2007) (explaining how tolling by post-conviction application stops the clock but does not restart it);  Flanagan v. Johnson, 154 F.3d 196, 199 n. 1 (5th Cir. 1998) (same).

Petitioner's post-conviction application was denied by the state courts at all levels. The final step was when the Supreme Court of Louisiana denied an application for a discretionary writ on October 6, 2020.  Tr. Vol. XI, pp. 2664-65; State v. Shivers, 302 So.3d 516 (La. 2020).  That ended any tolling effect.  Unlike on direct appeal, when the state's high court denies a post-conviction application, the 90-day opportunity to file a petition for certiorari with the Supreme Court does not continue the tolling effect of a post-conviction application.  Lawrence, 127 S.Ct. at 1083; Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999).

With 360 days already expired, the federal clock began to run again after October 6, 2020.  Petitioner had five days to timely file his federal petition.  The fifth day was October 11th (a Sunday), and Monday the 12th was Columbus Day, a legal holiday.  Thus, Petitioner had until October 13, 2020 to file a timely petition.  Fed. R. Civ. Pro. 6.

A federal habeas petition benefits from a prisoner mailbox rule that deems it filed when the prisoner tenders it to prison officials for delivery to the district court.  Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998).  Petitioner's federal petition was signed and dated October 12, 2020, and a cover letter to the court was stamped received by the prison Legal Programs Department on October 13, 2020.  The Department then scanned and emailed the petition to this court on October 14, 2020, where it was stamped as filed that same date. Thus, there is evidence that Petitioner tendered his petition to prison officials on a date that

would make his petition timely *if* his post-conviction application statutorily tolled the limitations period.  As explained in the next section, it did not.

### B.  The Post-Conviction Application was not Properly Filed

As noted above, the federal limitations clock began to run after January 28, 2010, when the conviction was final.  It ran until Petitioner either (1) filed a federal habeas petition or (2) tolled the limitations period by properly filing in state court an application for post-conviction relief.   28 U.S.C. § 2244(d)(2).  The tolling provision provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

A state post-conviction application that is rejected by the state court as untimely is not "properly filed" within the meaning of Section 2244(d)(2), so it does not toll the limitations period.  Pace v. DiGuglielmo, 125 S.Ct. 1807 (2005).  That holding applies to Louisiana applications that are denied as untimely under the two-year limitations period of La. Code Crim. Proc. art. 930.8.  Wardlaw v. Cain, 541 F.3d 275 (5th Cir. 2008).

Subject to certain exceptions, Article 930.8 provides that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final.  Petitioner's conviction became final under state law in October 2009 when the Louisiana Supreme Court denied writs on direct appeal. Petitioner filed his post-conviction application about 15 months later in January 2011, which appears to have been well within the two-year limit.  The State initially filed a timeliness objection based on an argument that the conviction became final earlier due to

a perceived untimely step in the appellate process (Tr. Vol. VIII, p. 1526), but the State withdrew the objection.  Tr. Vol. X, p. 2403.

The post-conviction application proceeded through the state courts.  An attorney enrolled for Petitioner in 2012 and filed a supplemental application to assert a claim under Miller v. Alabama based on Petitioner being 17 at the time of the offenses.  The matter remained pending for a few years until the Supreme Court held in Montgomery v Louisiana, 136 S.Ct. 718 (2016) that Miller applied retroactively to cases on state collateral review.  The trial court resentenced Petitioner in 2016 to life, but with the benefit of parole, for his second-degree murder conviction.  He did not appeal.

Judge Emanuel held an evidentiary hearing in 2019 and issued a written decision that denied the remainder of the post-conviction claims on the merits.  Petitioner filed a writ application, and the state appellate court denied it on the showing made.  Tr. Vol. XI, p. 2604.  Petitioner then filed a writ application to the Supreme Court of Louisiana, which denied the writ in a per curiam that stated: "Denied.  The application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies.  La. C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189."  Tr. XI, p. 2664-65.  No other grounds for denial were stated.

Petitioner devotes most of his memorandum (Doc. 6) to arguing that the Supreme Court of Louisiana was wrong to find his post-conviction application untimely.  He appears to have a sound argument, but the State points out that any error by the state's high court was likely caused by Petitioner using an incorrect date.  Petitioner's writ application to the Supreme Court of Louisiana—which is likely all the material that court would have when

it assessed the application—began with a procedural history that said the post-conviction application was filed in the district court on December 23, 2019 (rather than January 2011 when it was actually filed).  Tr. Vol. XI, p. 2610.  Petitioner attached as exhibits to his writ application undated, unstamped, and unsigned copies of his filings in the lower state courts. pp. 2614-50, 2654-58.  Those filings did contain information that the direct appeal process ended in October 2009, which would suggest to the Supreme Court of Louisiana that the post-conviction application had been filed about eight years too late. We cannot know for sure, but it appears likely that the court relied on Petitioner's mistaken representation about when he filed his application and, based on that date, denied the writ on the grounds that the application was untimely.

The one-year federal limitations period is tolled when a "properly filed" application for state post-conviction review is pending.  28 U.S.C. § 2244(d)(2).  But an untimely application is not properly filed.  "When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."  Pace,  125 S.Ct. at 1812.

The Supreme Court of Louisiana concluded that Petitioner's post-conviction application was untimely under state law, and the federal habeas court is not at liberty to second guess that court's decision that was based solely on the application of state law. Rudin v. Myles, 781 F.3d 1043, 1054 (9th Cir. 2014); Minor v. Baker, 842 Fed. Appx. 98 (9th Cir. 2021) (both declining to second guess the Nevada Supreme Court regarding the timeliness of a post-conviction filing).  "Under § 2254, federal habeas courts sit to review state court misapplication of *federal* law."  Charles v. Thaler, 629 F.3d 494, 500 (5th Cir. 2011).  "A federal court lacks authority to rule that a state court incorrectly interpreted its

own law." Id. at 500-01.  See also Davis v. McCain, 2020 WL 1921786 (W.D. La. 2020) (Perez-Montes, M.J.) (finding it improper to second-guess the Supreme Court of Louisiana regarding the application of its own rules).  Under Pace the application was not properly filed, so it did not statutorily toll the federal limitations period.

Petitioner's conviction was final for habeas purposes in 2010.  He did not file his federal habeas petition until 2020.  Absent statutory tolling by a properly filed post-conviction application between those dates, his federal petition was filed far outside the one-year limitations period.  It must be denied as untimely.

## C. Equitable Tolling

Petitioner makes a brief argument in his memorandum that any untimeliness on his part should be excused based on equitable tolling.  In support, he mentions restrictions that were in place at the prison in 2020 due to Covid-19 and Hurricane Delta.  He also argues that the Supreme Court of Louisiana wrongly held that this post-conviction application was untimely, which the court treats as another argument for equitable tolling.

The one-year limitation of Section 2244(d) "is subject to equitable tolling in appropriate cases."  Holland v. Florida, 130 S.Ct. 2549, 2560 (2010).  The petitioner who seeks equitable tolling bears the burden of proof on the issue.  Clarke v. Rader, 721 F.3d 339, 344 (5th Cir. 2013).  He must show (1) that he has been pursuing his rights with "reasonable diligence" and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  Holland, 130 S.Ct. at 2562.

The "extraordinary circumstances" must be factors outside the petitioner's control; delays of his own making do not qualify.  In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006).

Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). A district court's refusal to invoke the doctrine is reviewed for abuse of discretion. Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000).

None of the Covid-19 or hurricane related difficulties in 2020 have been shown to have affected Petitioner's ability to file a timely federal petition. It was determined above that, giving him the benefit of the doubt on various filing dates, his federal petition would be timely by the thinnest of margins but for the Supreme Court of Louisiana's decision that his post-conviction application was untimely. Petitioner makes an implied argument that equitable tolling is warranted because that decision was incorrect, but that appears to be an attempt at an end-run around the rule that the federal court does not second guess the state court's application of state law. Equitable tolling for that reason is also unwarranted because any mistake the state court made was likely due to Petitioner providing an incorrect date in his writ application and then attaching undated copies of his lower court proceedings, which together made it quite understandable that the Supreme Court of Louisiana would find that his post-conviction application was untimely. Petitioner was not misled by the State or prevented in any extraordinary way from asserting his rights. He appears to have doomed his own case by a mistake of his own making, and that does not warrant equitable tolling.

**Failure to Exhaust State Court Remedies**

Another reason to deny the petition is the procedural bar imposed by Petitioner's failure to properly exhaust his state court remedies with respect to the federal claims he presents. The bar is rooted in the requirement that an application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The requirement is designed to give the state courts a first opportunity to correct alleged violations of federal rights. Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). To satisfy it, a prisoner must fairly present his federal claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting the state courts to the federal nature of the claim. Id; O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999).

The claims that Petitioner presents in his federal petition may have been presented to the state courts in his post-conviction application filed in the trial court and his writ application to the appellate court, but he omitted them from his writ application to the Supreme Court of Louisiana. The trial court denied the claims on the merits. The appellate court issued a summary order that: "On the showing made, the writ is hereby denied." Tr. Vol. XI p. 2604. Petitioner filed a writ application with the Supreme Court of Louisiana and assigned as his single error an argument that the appellate court erred in issuing a summary denial without making any factual findings or explaining its decision. Tr. 2607-12. He did attach as exhibits his lower court filings that argued the substantive issues, but the body of the writ application made no specific reference to them.

Petitioner's omission of his habeas claims from his final writ application in state court means that he failed to properly exhaust his state court remedies.  "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 124 S.Ct. at 1351.  It is now too late, given Louisiana's two-year limitations period in La. C.Cr.P. art. 930.8, to return to state court and timely exhaust the claims.  The claims are, therefore, considered technically exhausted but subject to a procedural bar to review in federal court absent the demonstration of cause for the default and actual prejudice as a result.  Woodfox v. Cain, 609 F.3d 774, 793 (5th Cir. 2010);  Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998) .

The State raised the procedural bar defense in its memorandum, but Petitioner's traversal did not demonstrate cause for his failure to include these claims in his petition for discretionary review.  He filed his writ application pro se, so he has no one to blame but himself for the omission of the claims.  All of his claims are procedurally barred, with one caveat being that Petitioner was not represented by counsel on all claims in his post-conviction application.  (Attorney J. Ransdell Keene did represent Petitioner at a hearing on whether trial counsel was ineffective for not filing a motion to suppress an illegal search and seizure.)  A procedural default will not bar a federal habeas court from hearing a "substantial claim" of ineffective assistance of trial counsel if, in the state's initial review collateral proceeding the prisoner did not have counsel.  Martinez v. Ryan, 132 S.Ct. 1309

(2012).  As explained below, none of the ineffective assistance claims are substantial, so the bar extends to all claims.

**The Merits**

###### A.  Introduction

Petitioner's petition is untimely.  It is also subject to a procedural bar, except for any substantial claim of ineffective assistance of trial counsel on which Petitioner was not represented by counsel in the post-conviction process.  The State's memorandum has addressed the merits of all the claims in some detail.  The undersigned will also address them briefly to (1) explain why Martinez does not salvage any ineffective assistance claims from the procedural bar and (2) provide an alternative reason to deny the petition.

An initial issue is the standard of review.  Section 2254(d) applies great deference with respect to any claim that was "adjudicated on the merits" in state court.  The federal court looks to the last reasoned state court decision to determine whether a claim was adjudicated on the merits or on procedural grounds.  Wilson v. Sellers, 138 S. Ct. 1188 (2018); Robinson v. Louisiana, 606 Fed. Appx. 199, 203-04 (5th Cir. 2015).  The last reasoned state court decision with respect to the claims at issue denied them based solely on procedural grounds, untimeliness.  In these circumstances, the deference does not apply, and the court reviews the claims de novo.  Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir. 2014) ("For claims that are not adjudicated on the merits in the state court, we apply a de novo standard of review.").

## B.  Knowing Use of False Testimony

Petitioner argues that the prosecutor knowingly presented false testimony from Sherrod Whittie, the driver of the Town Car, because his trial testimony conflicted with his grand jury testimony.  Petitioner's petition merely listed this and his other issues.  He was granted an extension of time to file a memorandum, and he did, but the memorandum focused on the timeliness/Article 930.8 argument and once again merely listed this and other issues.  (Doc. 6).  The federal petition did generally refer to the state post-conviction application in support.  That application stated repeatedly that Whittie's trial testimony differed from that before the grand jury, but the only difference identified was testimony less harmful to the defense at trial than what Whittie told the grand jury.

Whittie testified at trial that he was driving, with Petitioner seated behind him and Johnson as his passenger.  Whittie testified that he did not see a rifle in the car or in Petitioner's possession, but he heard multiple gunshots fired from Petitioner's position in the car. Tr. Vol. V, pp. 996-1016.  While Whittie was on the stand, the State acknowledged that Whittie's grand jury testimony had some inconsistencies with his trial testimony, so the grand jury transcript was tendered to the court for review.  The court then turned the transcript over to defense counsel, who had it available for cross-examination.  Tr. 1017-18.  The only inconsistency noted by Petitioner in his post-conviction application is a contention that Whittie testified before the grand jury that Petitioner did shoot a firearm from the backseat.  Tr. Vol. VIII, pp. 1510-12.

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction."  <u>Kinsel v. Cain</u>,

647 F.3d 265, 271 (5th Cir. 2011), citing <u>Napue v. Illinois</u>, 79 S.Ct. 1173 (1959). To establish a denial of due process through the use of perjured testimony, a petitioner must show "that (1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." <u>Reed v. Quarterman</u>, 504 F.3d 465, 473 (5th Cir. 2007).

The testimony that Whittie gave at trial was less harmful to the defense than what he allegedly said before the grand jury. At trial, he said that he merely heard shots from the back seat; he allegedly told the grand jury that Petitioner had a firearm and fired it. There is no basis for finding a knowing presentation of any false testimony; the prosecutor candidly admitted that there were inconsistencies, and the defense was provided the grand jury transcript. Petitioner has not met his burden of satisfying the <u>Napue</u> elements.

### C.  Denial of Trial by Jury

Petitioner appeared with counsel at a pretrial hearing. Defense counsel announced that he had been informed by Petitioner that he wished to waive his right to a jury trial and be tried by the court alone. Judge Emanuel asked Petitioner if he heard the request and whether it was correct. Petitioner agreed, and the court proceeded to ask him if he understood that he had a right to be tried by jury and that if he waived it the judge alone would hear his case. Petitioner stated that, understanding all that, he still wished to waive his right to jury. Tr. Vol. X, pp. 2340-41.

At a hearing on the post-conviction application, Petitioner was confronted with that transcript. He admitted his statements but said that his counsel never properly advised him of the difference between bench and jury trial or explained what he was waiving, and he

was just "going on with what my lawyer was advising me." Tr. 2368-75. Defense counsel David McClatchey testified that Petitioner told him, a week or so before trial, that he wanted to waive his right to a jury because of concern that he might face at least ten white jurors (at a time when only ten of twelve were required for a conviction). Petitioner and the trial judge are both African American. McClatchey said that it was Petitioner's decision to elect a bench trial. Tr. 2379-80. The trial court made a finding, based on the record, that Petitioner "validly waived his right to a trial by jury." Tr. 2585. That decision is well supported. There is no basis to grant habeas relief on this claim.

### D.  Nature of the Charge

Petitioner listed in his memorandum an assertion that he was denied his right to be informed of the nature and cause of the accusations against him. He argued in his post-conviction application that the indictment specified the charges but did not present any of the underlying circumstances of how the crimes were committed. The state court denied this claim on the grounds that Petitioner was made aware of the nature of the charges against him by the bill of indictment, which met the requirements of state law. The court added that no motion to quash was filed nor was such a motion justified. Tr. 2584.

The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the charging instrument is so defective that the convicting court had no jurisdiction. McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994); Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988). Petitioner has not made such a showing.

### E.  No Probable Cause for Arrest

Petitioner listed in his memorandum a claim that he was arrested without probable cause.  He admitted in his post-conviction application that the officers had cause to believe that Petitioner "was a shooter" but argued that they "did not have probable cause to arrest [Petitioner] at his residence."  The trial judge, who found probable cause for the charges after  a preliminary examination (Tr. Vol. IV, pp. 803-22),  found "no merit to this claim." The undersigned agrees.  Gerstein v. Pugh, 95 S.Ct. 854, 865 (1975) (noting "the established rule that illegal arrest or detention does not void a subsequent conviction").

### F.  Post-Conviction Mistake

Petitioner devotes most of his memorandum to an argument that the Supreme Court of Louisiana was wrong when it held that his post-conviction application was untimely. There is no basis for habeas relief on this argument because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).

### G.  Brother was the Real Killer

Petitioner asked to supplement his post-conviction application to support an unspecified claim of prosecutorial misconduct.  He attached an affidavit from Sherrod Whittie in which Whittie stated that he did not tell the truth at trial because he had been threatened by Petitioner's older brother, James Shivers.  He said that James threatened to kill him and his family if he told the truth, which was that James had fired the long gun that night, and James told Whittie that he was to blame Petitioner because Petitioner was a juvenile.  Tr. Vol. XI, pp. 2527-31. Petitioner argues in his memorandum that his due

process and equal protection rights were somehow violated in relation to this supplemental filing.

The Fifth Circuit "has long viewed recanting affidavits with 'extreme suspicion.'" Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005). Petitioner does not make clear what claim the affidavit is intended to support. If it was knowing presentation of false testimony, that claim has been found to lack merit. To the extent it is asserted as a claim of actual innocence, that is not an independent ground for habeas relief. Herrera v. Collins, 113 S.Ct. 853 (1993); Coleman v. Thaler, 716 F.3d 895, 908 (5th Cir. 2013). The undersigned sees no basis for habeas relief stemming from this filing.

### H. Ineffective Assistance of Counsel

Petitioner listed seven grounds of alleged ineffective assistance of counsel and referred to his post-conviction memorandum in support. To prevail on such a claim, Petitioner must satisfy both the performance and prejudice elements of Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). To show that his trial counsel's performance was deficient, he must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011). And "[a] failure to establish either element is fatal to a petitioner's claim." Charles v. Stephens, 736 F.3d 380, 388 (5th Cir. 2013).

Five of the claims are that counsel did not (1) file a motion to quash the indictment on the grounds it did not inform the defendant of the nature of the charges, (2) challenge the lawfulness of Petitioner's arrest, (3) move for a mistrial or object on the grounds that Whittie's trial testimony differed from his grand jury testimony, (4) object to false testimony of Whittie, or (5) inform Petitioner of his right to trial by jury. The substance of each of those claims was discussed above, and none was found to have merit. There is no basis to determine that counsel fell short with respect to any of these matters, or that the result of the proceedings would have been different had counsel pursued them.

Petitioner also argues that counsel was ineffective for failing to interview "key" state eyewitnesses. Neither Petitioner's filings with this court nor his post-conviction application (Tr. Vol. VIII, pp. 1521-22) identified any witnesses that were allegedly not interviewed, and Petitioner has not pointed to any evidence to support this contention. Relief is not permitted on this claim.

Finally, Petitioner argues that counsel should have filed a motion to suppress evidence. His petition did not identify the evidence or grounds for such a motion, but his post-conviction application argued that counsel should have challenged the search of Petitioner's home, which led to the discovery of the 9 mm handgun. Tr. Vol. VIII, pp. 1512-19.

The state court held an evidentiary hearing on this claim. Defense counsel testified that he reviewed the police reports, which indicated that Petitioner's mother (Mrs. Shivers) gave consent to the search of her home. Counsel noted that there was no signed consent form in the reports, so he spoke to Mrs. Shivers, who confirmed that she did consent to the

police entering the home.  Based on that and the other facts, counsel saw no basis to file a motion to suppress.  Tr. Vol. X, pp. 2382-87.  Mrs. Shivers, who invoked the Fifth Amendment and refused to testify when called as a trial witness (Tr. Vol. VI, pp. 1230-33), testified at the hearing and denied that she consented to the search or ever discussed the issue with counsel.  Tr. 2396-400.  However, the record includes a "Permission for Search & Seizure" form signed by Mrs. Shivers with respect to her residence.  Tr. Vol. I, p. 85.  A detective testified that he obtained her verbal consent and that she signed the form, which was introduced into evidence at trial.  Tr. Vol. VI, p. 1262.

To prevail on this <u>Strickland</u> claim, Petitioner would have to show that his Fourth Amendment claim was meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  <u>Kimmelman v. Morrison</u>, 106 S.Ct. 2574, 2583 (1986).  There is no significant likelihood that a motion to suppress would have succeeded in the face of the signed consent form and officer testimony.  Counsel was not deficient for not filing the motion, and there are no grounds for prejudice.

**Conclusion**

The Supreme Court of Louisiana's decision that the post-conviction application was untimely means that it did not statutorily toll the federal limitations period, which doomed this federal petition to untimeliness.  There is no basis for equitable tolling, so the petition should be denied as untimely.  In the alternative, all claims in the petition are subject to a procedural bar because they were not properly presented to the state's highest court in the discretionary writ application.  In the further alternative, the claims all lack merit.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>See</u> <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows,

at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

   THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of April, 2023.

**Mark L. Hornsby**
**U.S. Magistrate Judge**